839 P.2d 1237

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Frank Phillip ZUBIZARETA, Defendant–Appellant.**

No. 19429.

Court of Appeals of Idaho.

Sept. 14, 1992.

Alan E. Trimming, Ada County Public Defender, Timothy L. Hansen, Deputy Public Defender, Boise, for appellant. Timothy L. Hansen argued.

Larry EchoHawk, Atty. Gen., Thomas P. Watkins, Deputy Atty. Gen., Boise, for respondent. Thomas P. Watkins argued.

WALTERS, Chief Judge.

Frank Phillip Zubizareta was charged with felony driving under the influence

(D.U.I.). I.C. §§ 18–8004, –8005(3). He moved to dismiss the case and to suppress evidence on the grounds that the arresting officers had no reason to approach him when he was sitting in his legally parked car, and that his arrest violated his fourth amendment rights to be free from unreasonable searches and seizures. The district court denied the motions. Zubizareta then entered a conditional plea of guilty, reserving his right to appeal from the district court's orders. We affirm.

The pertinent facts are as follows. Shortly before midnight on December 15, 1990, Officers Walker and Root of the Boise City police department were called to a home in Boise upon a complaint that "a drunk was refusing to leave." Apparently, a babysitter had called 911 with the information that a drunk person was at her front door and would not go away. Although unknown to the officers at the time, the intoxicated person was Zubizareta, who supplied further information in his version of the incident and which we recount here for context: the home was that of Zubizareta's girlfriend, with whom he had been drinking and arguing earlier in the evening. After having "too many beers," Zubizareta left his girlfriend and drove to her house, apparently to wait for her so they could talk. Before he arrived, however, the girlfriend had called to tell the babysitter not to let Zubizareta have the baby, their baby, as he might take it to his house. The babysitter refused to answer the front door when Zubizareta rang and rang some more. Realizing that he would not be invited in, Zubizareta retreated to his car to keep warm.

When they arrived on the scene, Officers Walker and Root noticed a car legally parked on the street directly in front of the home which was the source of the complaint. Officer Walker walked to the front door of the house to get more information. He talked to the babysitter who appeared very frightened and who attempted to explain the situation. Officer Root walked to the parked car, which had its motor running and Zubizareta sitting inside. The officer wanted to see if the person in the car was involved in the dispute and to make sure the person did not pose a threat to the officers.

When Officer Root approached the car he knocked on the driver's closed window. Zubizareta, sitting in the driver's seat, voluntarily rolled down the window. Officer Root told Zubizareta why he was there, obtained Zubizareta's name, and engaged him in brief conversation. During the exchange, Officer Root detected a very strong odor of an alcoholic beverage coming from Zubizareta's mouth. There is a dispute in the record as to the sequence of these events. Officer Root testified at the suppression hearing that he approached Zubizareta, told him why he was there, "and requested that he turn off his engine which he complied and did so." Later in the hearing, he testified that at that point he "had not arrested [Zubizareta] or done anything. I hadn't had him get out of the car or anything. I just asked him to sit there—turn off his engine and sit there, which he complied." The state interprets this testimony to mean that the request to turn off the motor was made after the conversation and after the officer smelled alcohol on Zubizareta's breath. It is clear, however, that during the conversation Officer Root smelled alcohol before walking from the car to talk to other officers who had just arrived, and before asking Zubizareta to remain seated, which he did. While the encounter was taking place, Boise Police Officers Sherfick and Jackson arrived as backup. Officer Root then noticed that Officer Walker, still at the front door of the house talking to the babysitter, was pointing to indicate that Zubizareta was the subject of the complaint.

The four officers then discussed that the babysitter did not want to file a complaint but wanted Zubizareta to go away. Officer Root observed that Zubizareta appeared intoxicated and should not be allowed to drive. Officers Jackson and Sherfick then asked Zubizareta to get out of the car, which he did. Officer Sherfick smelled a very strong odor of alcohol coming from Zubizareta, who also slurred his speech, walked in a staggering, stumbling manner—to the point that he almost fell down

and had to lean against the car for support—and he appeared to have urinated in his pants. After exiting the car, he became very agitated and belligerent to the officers. In Officer Sherfick's opinion as one trained and experienced in detecting drunk drivers, Zubizareta was "definitely under the influence of alcohol." He was asked to perform several field sobriety tests. He refused. He was then arrested for D.U.I. and taken to jail, where he refused to take a breath test. Later, he was charged with felony D.U.I.

Before the preliminary hearing, Zubizareta moved to dismiss the charge based on the state's inability to produce the babysitter who allegedly told Officer Walker that Zubizareta was the subject of the complaint. Evidently, the babysitter had moved out of state and was unavailable at the time of the hearing. Zubizareta argued that the babysitter's testimony was necessary for the state to establish probable cause for Officer Root's initial approach to the car. The magistrate denied the motion and bound Zubizareta over to the district court for trial.

In the district court, Zubizareta filed motions to dismiss and to suppress evidence, renewing his assertion that the evidence presented at the preliminary hearing failed to establish articulable suspicion or probable cause to believe that he had committed the crime of driving under the influence. The district court denied the motions. Thereafter, Zubizareta entered a conditional guilty plea and brought this appeal.

■ First, we note our standard of review. A trial court's decision on a motion to suppress presents mixed questions of law and fact. *State v. McAfee*, 116 Idaho 1007, 783 P.2d 874, (Ct.App.1989); *State v. Jones*, 115 Idaho 1029, 772 P.2d 236 (Ct.App.1989). On appeal we defer to the trial court's findings of facts if they are supported by substantial evidence. *Id.* However, we freely review the trial court's determinations as to whether constitutional requirements have been satisfied in light of the facts found. *Id.* Because the district court here did not make explicit findings of facts, this Court will examine the record to

determine the implicit findings that underlie the lower court's determination, and uphold those findings if they are supported by substantial evidence. *State v. Kirkwood*, 111 Idaho 623, 726 P.2d 735 (1986). We take a similar approach to review the trial court's denial of the motion to dismiss.

■ The fourth amendment to the U.S. Constitution guarantees the right of every citizen to be free from unreasonable searches and seizures. However, this guarantee is not so broad that every police-citizen encounter violates the person's constitutional rights. As the United States Supreme Court has stated, not all personal intercourse between policemen and citizens involves the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1878 n. 16, 20 L.Ed.2d 889 (1968). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *Id.* Following this rule, this Court has stated that:

A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking him questions, or by putting questions to him if he is willing to listen. *Florida v. Bostick*, — U.S. —, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Unless and until there is a detention, there is no seizure within the meaning of the fourth amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498, 103 S.Ct. at 1324. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Florida v. Rodriguez*, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Thus, where an officer merely approaches a person who is standing on the street, or seated in a non-moving vehicle located in a public place, and poses a few questions, no seizure has occurred. *See United*

States v. Castellanos, 731 F.2d 979 (D.C.Cir.1984); *United States v. Woods*, 720 F.2d 1022 (9th Cir.1983).... [T]he critical inquiry is whether, taking into account all of the circumstances surrounding the encounter, "the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Bostick*, —— U.S. at ——, 111 S.Ct. at 2387, *quoting Michigan v. Chesternut*, 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565 (1988). *State v. Osborne*, 121 Idaho 520, 523–24, 826 P.2d 481, 484–84 (Ct.App.1991). *See also State v. Godwin*, 121 Idaho 491, 826 P.2d 452 (1992); *State v. Fry*, 122 Idaho 100, 831 P.2d 942 (Ct.App.1992). The two questions we must answer in this case are: (a) when was Zubizareta seized; and (b) was the seizure reasonable?

■ A majority of jurisdictions have held that "the mere approach and questioning of [persons in parked vehicles] does not constitute a seizure." W. LAFAVE, SEARCH AND SEIZURE § 9.2(h), at 415–16 and 408–409 n. 230 (2nd ed. 1987). In the instant case, we can easily conclude that Zubizareta was not seized when Officer Root first walked up to his car, tapped on the window, and engaged Zubizareta in brief conversation. The officer was legitimately where he was supposed to be at the time. He was also walking into an unknown situation when responding to the complaint. It was possible for the officer, without further knowledge, to surmise that because of the nature of the complaint and Zubizareta's location and activity, Zubizareta may have been involved in the dispute. Officer Root's desire to talk to Zubizareta was a reasonable, common-sense approach to the situation.

■ Zubizareta argues that he had done nothing visibly wrong to warrant the officer's attention, therefore Officer Root had no reasonable, articulable suspicion to approach him. The requirement of reasonable articulable suspicion is a product of *Terry v. Ohio, supra,* and its progeny, and embraces situations where an officer briefly detains a person for investigative purposes. In a *Terry* stop, the officer communicates to the detainee, either orally or through a show of force or authority, that he is not free to go about his business. Because the individual's freedom of movement is restricted, fourth amendment protections apply to assure that the minimal seizure is reasonable. To support his argument, Zubizareta cites *McAfee, supra,* 116 Idaho 1007, 783 P.2d 874, in which this Court held that—based on all the circumstances of the incident—the police did not have reasonable, articulable suspicion to awaken a man sleeping in his legally parked van and submit him to field sobriety tests. The officers had no indication that the driver had broken any laws before they rousted him from the van. He failed his field tests, prompting an incriminating blood-alcohol test and arrest for D.U.I.

In *McAfee*, this Court did not expressly state when the defendant was seized. However, it is clear that the seizure occurred when the officers asked the defendant to step out of the van. Only at that point was the fourth amendment implicated. Before that act, the police had every right to approach the van and ask questions, even if no obvious criminal activity was afoot. The defendant also was free to not respond to the officers' questions.

In this case, the initial encounter did not intrude upon Zubizareta's liberty sufficiently to invoke the fourth amendment. As in *McAfee*, the police were authorized to approach the car and attempt to talk to Zubizareta. Zubizareta voluntarily complied with the request to roll down the window. His freedom to go about his business was not restricted at this point.

Zubizareta argues, however, that the officer's request to turn off the motor was made before detecting alcohol on his breath, constituting a seizure without reasonable articulable suspicion. We find this argument to be unpersuasive for several reasons. First, our Supreme Court has held in another D.U.I. case that "[a] brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be reasonable" de-

pending on the facts known to the officer at the time. *In Matter of Clayton*, 113 Idaho 817, 819, 748 P.2d 401, 403 (1988). In *Clayton*, an officer took the car keys from a person seated in the driver's position in a parked car with the motor running and who was slumped over the steering wheel due to intoxication. Although *Clayton* spoke in terms of stopping a suspicious individual in order to effect a *Terry* stop, it is clear that Officer Root, in the instant case, had reason to think Zubizareta may have been involved in the dispute given the circumstances surrounding the event. The nature of the complaint, Zubizareta's location in front of the house, the fact that he was in a running but parked car, and the lack of other activity in the area, would naturally direct the officers' suspicions to him and indicate that his presence should be investigated. Therefore Officer Root had reason to momentarily maintain the status quo or "freeze" the setting for a quick assessment.

Second, despite the disputed chronology, there is no doubt that the officer requested Zubizareta to turn off the motor, as opposed to ordering him to do so. There was no sign of force or authority beyond the officer's uniform to require Zubizareta to submit or to limit his ability to refuse. A parallel situation occurred when the officer asked Zubizareta to roll down the window. The request was not a seizure, although an order may have been. *See LAFAVE, supra.*

Third, talking to Zubizareta was an unintrusive way to insure that he did not pose a threat to the officers as they investigated the complaint. Asking him to turn off the motor enhanced the justifiably cautious officer's safety while minimally intruding on Zubizareta's freedom of movement. It also gave the officers the few minutes they needed to investigate the situation without risk of harm to themselves or to Zubizareta.

Only when Officer Root told Zubizareta to remain seated did the fourth amendment apply. At that time, a reasonable person in Zubizareta's position would have not felt free to go about his business. The request,

however, was permissible, because Officer Root had detected a strong odor of alcohol on Zubizareta's breath. Due to the latter's position in the driver's seat of the stationary but running car, the officer had a reasonable, articulable suspicion that Idaho's drunk driving law was being violated and that Zubizareta should be detained for investigation of possible criminal activity.

The next question is whether seizing Zubizareta was reasonable. We conclude that it was. Not all seizures of persons need be supported by probable cause. *Terry, supra; Fry, supra.* A seizure for purposes of investigation may be supported by reasonable, articulable suspicion by the police that, based on the totality of the circumstances, the person seized is engaged in criminal activity. *Id.* In the case at bar, the seizure was limited to investigating whether Zubizareta was inebriated when he was in the car. Officer Root's request to turn off the car's engine and for Zubizareta to remain seated in the car was minimally intrusive. The seizure was not unreasonable.

Although Officer Jackson's request for Zubizareta to get out of the car and perform several field sobriety tests increased the degree of the seizure, the request was reasonable in light of the circumstances. Once outside the car, Zubizareta's difficulty in speaking and standing, the smell of alcohol on his breath, his watery eyes, urine-soaked trousers and his agitated attitude toward the officers indicated that he was inebriated and unable to drive. These factors gave the officers the well-founded belief, easily held by a person of ordinary prudence, that a crime had probably been committed, thereby establishing probable cause to make the arrest. *See State v. Webb*, 118 Idaho 99, 794 P.2d 1155 (Ct.App. 1990); *State v. Armbruster*, 117 Idaho 19, 784 P.2d 349 (Ct.App.1989); *State v. Middleton*, 114 Idaho 377, 757 P.2d 240 (Ct. App.1988).

Zubizareta also argues the magistrate erred in holding that, in order to bind a D.U.I. defendant over on a charge at a preliminary hearing, the state need not establish probable cause for the initial ap-

proach. Zubizareta urges that Idaho Criminal Rule 5.1 requires otherwise. Here, the court held that probable cause for the approach is not one of the elements of a D.U.I. charge and that the state's burden was to put on substantial evidence on each element of the crime.

■■■■■ We have already stated that Officer Root's initial approach of Zubizareta did not trigger fourth amendment protections against unreasonable seizures. Probable cause, required by the fourth amendment to justify an arrest, or complete restriction of a person's liberty, is not required for a mere approach and conversation. *See Terry, supra.* Although Zubizareta was seized when Officer Root asked him to stay in the car, at that stage the officer possessed reasonable articulable suspicion of criminal activity and the seizure was reasonable. More specifically, we find Zubizareta's interpretation of I.C.R. 5.1 to be wrong. Rule 5.1(b) states:

(b) Probable cause finding. If from the evidence the magistrate determines that a public offense has been committed and that there is probable or sufficient cause to believe that the defendant committed such offense, the magistrate shall forthwith hold him to answer in the district court. The finding of probable cause shall be based on substantial evidence upon every material element of the offense charged.

In other words, if there is substantial evidence to conclude that the defendant committed each of the acts or elements constituting the charged crime, the sum of those elements establishes probable cause that the defendant has committed a crime. Probable cause, then, is not an element of the offense, but a finding of probability that the defendant has committed the offense based upon all the facts considered as a whole. *Webb,* 118 Idaho at 101–02, 794 P.2d at 1157–58. A lack of probable cause may invalidate an arrest, but not through a failure to prove an element of a crime. Invalidation occurs through the officer's inability to show that at the time of the arrest, he knew facts which would lead a person of ordinary prudence to honestly believe that the suspect has committed a crime. *Id.* at 101, 794 P.2d at 1157.

As described in the statute and stated in the charges filed against Zubizareta, the elements of felony driving under the influence are limited to whether Zubizareta drove or was in actual physical control of his car, while under the influence of alcohol or other intoxicating substances, in Ada County, Idaho, and that he had pled or been found guilty of at least two violations of I.C. § 18–8004 within the previous five years. These facts were easily, clearly, and honestly ascertained by the police in connection with Zubizareta's arrest.

■■■ Next, Zubizareta argues that because the prosecutor was unable to have the babysitter testify as the apparent source of the complaint, the information supporting Officer Root's initial approach was hearsay and should not have been considered by the court. He argues that the babysitter's testimony was necessary to sustain a finding of probable cause. We conclude that not having the babysitter testify was inconsequential. Even without her information, Officer Root acted within the range of constitutionally permissible behavior when he tapped on Zubizareta's window.[1] Zubizareta's later arrest was supported by probable cause that he was breaking the law.

In summary, we hold that the initial approach of Zubizareta was a reasonable, unintrusive inquiry by the police who were legitimately where they were supposed to be at the time. The approach did not trigger fourth amendment protections. After the encounter, the police possessed sufficient articulable suspicion to detain Zubizareta and investigate whether he was under the influence when in the driver's position in his car. Their investigation pro-

---

1. We note that because probable cause deals with the probabilities that a person has committed a crime instead of iron-clad certainties, hearsay and multiple hearsay may be used to support a finding of probable cause to arrest a person if the basis for the hearsay declarant's knowledge is demonstrated and the declarant's reliability or credibility is established. *State v. Alger,* 100 Idaho 675, 603 P.2d 1009 (1979), *cited in LAFAVE, supra,* § 3.2(d) at 579–80 n. 100.

duced positive results which established probable cause for his arrest. For these reasons, the denials of the motions to dismiss and to suppress are affirmed.

SWANSTROM and SILAK, JJ., concur.