36 P.3d 832

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Baldemar GOMEZ, Defendant–Appellant.**

No. 26814.

Court of Appeals of Idaho.

Nov. 20, 2001.

Wiebe & Fouser, Canyon County Public Defenders, Caldwell, for appellant. Jayme Beaber argued.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

SCHWARTZMAN, Chief Judge.

Baldemar Gomez appeals from the district court's order affirming the magistrate's denial of his motion to suppress evidence. We reverse.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 14, 1998, Caldwell Police Detective Baltizar Garza observed a man using a pay telephone. Garza recognized the man from his prior police contacts as Gomez. Believing that he had seen Gomez's name on a list of outstanding arrest warrants three or four months earlier, Garza pulled into an adjacent parking lot and approached Gomez. Garza

ordered Gomez to "hang up the phone ... I need to talk to you about a warrant." Knowing that Gomez sometimes carried weapons, Garza asked Gomez if he had any weapons on him. Gomez said that he did. Garza then had Gomez place his hands on the hood of Garza's car, frisked him, and recovered a folded five-inch butterfly knife. Gomez was arrested for and charged with carrying a concealed weapon.

Gomez filed a motion to suppress the knife, arguing that Garza's command to hang up the phone and speak to him about a warrant constituted a seizure without reasonable suspicion in violation of Gomez's constitutional rights under the Fourth Amendment of the federal Constitution and Article 1, § 17 of the Idaho Constitution. At the hearing on Gomez's motion to suppress, Garza testified to the facts as set forth above. Garza testified that he did not confirm that there was an outstanding warrant for Gomez before ordering Gomez to hang up the telephone and come talk to him. He also testified that after arresting Gomez he searched for an outstanding warrant, but was unable to locate one.

Gomez's counsel argued that Garza's belief in the existence of an outstanding arrest warrant was based upon stale information. He contended that when Garza commanded Gomez to hang up the phone and talk to him about a warrant, Gomez did not feel free to leave and was thus seized without reasonable suspicion. The state argued that Garza reasonably believed there was a warrant for Gomez and wanted to talk to him about it. The magistrate orally ruled that Gomez was not seized and that the frisk for weapons, which uncovered the knife that became the basis for the concealed weapons charge, was reasonable in light of Gomez's admission to having a weapon. The magistrate then denied Gomez's motion to suppress. Pursuant to a plea agreement, Gomez pled guilty preserving his right to appeal the denial of his motion to suppress. Gomez's sentence of ninety days in jail, with eighty days suspended, together with a fine and two years probation, was stayed pending appeal to the district court.

Gomez appealed. The district court affirmed the magistrate's denial of Gomez's motion to suppress, explaining that:

Detective Garza reasonably believed that a warrant for Gomez's arrest existed based upon a warrant sheet Garza had seen three to four months prior. The Court finds no evidence to contradict the magistrate's finding that Garza's belief was reasonable. While no actual warrant existed, and a less confrontational tone should have been used by the detective, the seizure was part of a valid investigatory stop. Detective Garza's question whether Gomez was carrying weapons was a limited intrusion, based upon Garza's knowledge of Gomez's history with weapons and for purposes of officer safety.

Upon Gomez's admission of a weapon, Detective Garza had the requisite probable cause to arrest for the crime of carrying a concealed weapon under Idaho Code 18–3302. Therefore, the arrest was valid and the evidence should not be suppressed.

Gomez appeals again.

## II.

## GENERAL STANDARD OF REVIEW

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bitt,* 118 Idaho 584, 585 n. 1, 798 P.2d 43, 44 n. 1 (1990); *State v. Ferreira,* 133 Idaho 474, 478, 988 P.2d 700, 704 (Ct. App.1999); *State v. Bowman,* 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App.1993).

## III.

## BASIS FOR THE STOP AND FRISK OF GOMEZ

■ The state *concedes* that Gomez was seized when Garza ordered him to hang up the phone and come over to talk, but argues that Garza made a reasonable mistake about whether there was an outstanding arrest warrant for Gomez. Gomez argues that Garza lacked reasonable suspicion to conduct an investigatory stop based upon Garza's be-

lief that he saw Gomez's name on a warrant list three to four months earlier, and thus Gomez was seized in violation of his Fourth Amendment rights.[1] It is undisputed that the sole basis for this detention was Garza's subjective belief that he had seen Gomez's name on a warrant list three or four months earlier.

Under the stop-and-frisk exception created in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a stop and a frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct.App.2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct.App. 1999). An officer is justified in stopping a person to investigate possible criminal behavior if articulable facts known to the officer give rise to a reasonable suspicion that the person has committed or is about to commit a crime. *United States v. Brignoni Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607, 618 (1975); *Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1879–81, 20 L.Ed. 2d at 905–06; *State v. Rawlings*, 121 Idaho 930, 932, 829 P.2d 520, 522 (1992). Whether a reasonable suspicion existed is determined by looking at the totality of the circumstances and the facts available to the officer at the moment of the seizure. *Id.*

In Fourth Amendment applications, the reasonableness of police conduct is judged against an objective standard. *State v. Weaver*, 127 Idaho 288, 291, 900 P.2d 196, 199 (1995); *State v. Foster*, 127 Idaho 723, 727, 905 P.2d 1032, 1036 (Ct.App.1995). Although this standard allows room for some factual mistakes on the part of police officers, constitutional standards require that the mistakes must be those of reasonable men. *Id.* Subjective good faith on the part of the officer is not enough. As the United States Supreme Court has explained, "If subjective good faith alone were the test, the protec-

tions of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects,' only at the discretion of the police." *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed. 2d at 906.

No evidence of an outstanding warrant list was ever submitted to demonstrate that Gomez's name had actually appeared on such a list. Garza testified that Gomez had been the subject of numerous arrest warrants and that he believed that three or four months prior he had seen Gomez's name on a list of outstanding warrants prepared by the Canyon County Sheriff's Office annually or semi-annually. In this case there was no testimony as to how old the warrant list was when Garza saw it three or four months prior to the instant contact with Gomez.[2] Moreover, the state did not even attempt to submit the warrant list on which Garza sought to rely.

Accordingly, we are unable to ascertain whether the warrant list actually existed, let alone whether Garza could reasonably rely on such an old warrant list. *See and compare People v. Conway*, 222 Cal.App.3d 806, 808–12, 271 Cal.Rptr. 832, 833–36 (Cal.App. 1990) (upholding an investigative stop based upon a month old arrest warrant where the warrant containing Conway's name was introduced into evidence by the state and the officer frisked Conway while awaiting confirmation from dispatch just before learning that the warrant had been served two weeks earlier). We are constrained to conclude that the state failed to meet its burden of demonstrating that Garza's warrantless detention of Gomez was based upon objectively reasonable suspicion, and thus reasonable under the Fourth Amendment. We therefore hold that the detention was unlawful.

Next, we must determine whether the frisk was the product of the unlawful detention. We note that given Gomez's record of violent criminal acts, any officer would want

---

1. Although Gomez alleged a violation of his state and federal rights to be free from unreasonable searches and seizures, on appeal he has not suggested that the analysis should be different under the state and federal constitutions. Therefore, we will address only the Fourth Amendment claim. *McCoy v. State*, 129 Idaho 70, 72 n. 1, 921 P.2d 1194, 1196 n. 1 (1996).

2. In the context of arrest cases based on similar facts, the staleness of the information relied upon is a key factor in assessing the reasonableness of police conduct. *See* Joan Teshima, J.D., Annotation, VALIDITY OF ARREST MADE IN RELIANCE UPON UNCORRECTED OR OUTDATED WARRANT LIST OR SIMILAR POLICE RECORD, 45 A.L.R. 550–574 (1986), Supp. (2000).

to exercise due caution when contacting Gomez; but here that very contact is itself unlawful. Moreover, the only articulated basis for the frisk in this case was Gomez's response to Garza's post-detention inquiry into the presence of any weapons in Gomez's possession. Having determined that Gomez had been unlawfully detained at the time he responded to Garza's inquiry about weapons, we conclude that Gomez's statement is the fruit of his unlawful seizure and must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963). *See also State v. Bainbridge,* 117 Idaho 245, 247–50, 787 P.2d 231, 233–36 (1990); *State v. Zavala,* 134 Idaho 532, 5 P.3d 993 (Ct.App.2000); *State v. Luna,* 126 Idaho 235, 880 P.2d 265 (Ct.App.1994).

Accordingly, we hold that the frisk was the product of the unlawful detention, and the butterfly knife seized as a result thereof must be suppressed.

## IV.

## CONCLUSION

The district court's opinion affirming the magistrate's order denying Gomez's motion to suppress is reversed. Gomez's conviction for possession of a concealed weapon is vacated. The case is remanded for further proceedings.

Judge LANSING and Judge Pro Tem WESTON Concur.