155 P.3d 704

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Adrian Albor CARDENAS, Defendant–Respondent.**

No. 31758.

Court of Appeals of Idaho.

Nov. 2, 2006.

Rehearing Denied Dec. 18, 2006.

Review Dismissed Jan. 3, 2007.

904

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

Molly J. Huskey, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant. Elizabeth A. Allred argued.

WALTERS, Judge Pro Tem.

The state appeals from the district court's order granting Adrian Albor Cardenas' motion to suppress evidence. We affirm in part, reverse in part and remand to the district court.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Two uniformed Sheriff's deputies went to a Nampa residence to look for a juvenile runaway named Sarah. The deputies saw Cardenas in a Nissan Sentra parked in the driveway. The deputies parked their patrol vehicles across the street. As the deputies began walking to the Sentra, Cardenas got out and started toward the house. A deputy told Cardenas "he needed to come speak to me," and Cardenas turned and came back. The deputy asked Cardenas if he knew Sarah. Cardenas replied that he did not. The deputy then asked Cardenas who owned the Sentra, and Cardenas said it belonged to a friend, but he did not know the friend's name. On the officer's request, Cardenas consented to a search of the vehicle's glove box for ownership papers. The search produced four checkbooks, each with a different name, none of which was Cardenas. Dispatch confirmed that the checks were stolen.

A deputy handcuffed Cardenas, pat-searched him, and obtained a bullet from Cardenas' pants pocket. A deputy also noticed a marijuana cigarette under the vehicle. On being questioned, Cardenas denied any knowledge of the cigarette, but after one deputy insisted that he tell the truth, Cardenas admitted it belonged to him. Cardenas was arrested for possession of a controlled substance, marijuana, I.C. § 37–2732(c)(3). Another search, incident to Cardenas' arrest, produced Joker rolling papers from his pocket. Cardenas was transported to the Canyon County jail.

A detective located the owner of the vehicle, who refused to consent to a further search of the vehicle. The owner said she authorized Cardenas to pick up the car and take it to the Nampa residence. The officers obtained a warrant to search the vehicle. The resulting search produced a loaded handgun as well as marijuana and amphetamine. The detective contacted Cardenas at the Canyon County jail and advised him of his rights, pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The detective then asked Cardenas where he got the marijuana cigarette. Cardenas stated that he found the marijuana in the car, rolled a marijuana cigarette, and then put the marijuana in a shopping bag, and that after finding the gun between the seats he decided to move it under the passenger seat.

Cardenas was charged with concealing a dangerous weapon and possession of marijuana, amphetamine, and drug paraphernalia. At the suppression hearing, the district court decided that the continued detention of Cardenas was unlawful after Cardenas said he did not know the runaway, Sarah, and all the evidence was suppressed. The state now appeals.

## II.

### STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. Our standard distinguishes Fourth Amendment questions of law from questions of fact. *State v. Schmidt*, 137 Idaho 301, 303, 47 P.3d 1271, 1273 (Ct.App. 2002); *State v. Silva*, 134 Idaho 848, 852, 11 P.3d 44, 48 (Ct.App.2000); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App.1996); *State v. McAfee*, 116 Idaho 1007, 1008, 783 P.2d 874, 875 (Ct.App.1989). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999). When a decision on a motion to suppress is challenged, we accept the trial court's find-

ings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

## III.

### DISCUSSION

#### A. Cardenas' Encounter with the Police was Not Consensual

The state asserts that the encounter between Cardenas and the police was consensual, and therefore lawful, until Cardenas was handcuffed. The district court held that the encounter became unlawful when the police continued to detain Cardenas after he said he did not know the runaway, before he was handcuffed. Cardenas argues that the encounter became unlawful even earlier. He submits that his contact with the police began with an order which constituted an illegal seizure at the outset.

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens amount to seizure. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889, 905 n. 16 (1968); *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct.App.1992); *State v. Knapp*, 120 Idaho 343, 346, 815 P.2d 1083, 1086 (Ct.App.1991); *State v. Zapp*, 108 Idaho 723, 726–27, 701 P.2d 671, 674–75 (Ct. App.1985). Only when an officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen may a court conclude that a seizure has occurred. *Page*, 140 Idaho at 843, 103 P.3d at 456; *State v. Nickel*, 134 Idaho 610, 612–13, 7 P.3d 219, 221–22 (2000); *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App.1991); *see, e.g., State v. Rawlings*, 121 Idaho 930, 932, 829 P.2d 520, 522 (1992) ("An individual who is accosted by a police officer and has his freedom to walk away restrained has been seized."). The United States Supreme Court, in *United States v. Menden-*

*hall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980), stated:

> Examples of circumstances that might indicate seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, *or the use of language* or tone of voice *indicating that compliance with the officer's request might be compelled.*

(emphasis added). *See State v. Gutierrez,* 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct.App. 2002) ("the officer's comments that followed after the speeding warning were not a sociable exchange...."); *State v. Gomez,* 136 Idaho 480, 482, 36 P.3d 832, 834 (Ct.App.2001) (defendant was seized, the state conceded, when the detective ordered him to "hang up the phone ... [because] I need to talk to you about a warrant."); *State v. Zubizareta,* 122 Idaho 823, 827, 839 P.2d 1237, 1241 (Ct.App. 1992) (discussing seizure which occurred in *McAfee,* 116 Idaho at 1008, 783 P.2d at 875, when officers, after awaking McAfee, directed him to step out of his van); *Fry,* 122 Idaho at 103, 831 P.2d at 945 ("[the officer] asked Fry what he was doing.... Unlike other cases in which the police request the subject's cooperation in answering questions, the inquiry here as to what Fry was doing did not give Fry the option of answering or not."); *accord* WAYNE R. LaFAVE, SEARCH AND SEIZURE § 9.4(a) at 433–34 (4th Ed.).

 A seizure does not occur simply because a police officer approaches an individual on the street by asking if the individual is willing to answer some questions or by putting forth questions if the individual is willing to listen. *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991); *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229, 235–36 (1983). *See Page,* 140 Idaho at 843, 103 P.3d at 456 ("Officer Marshall asked Page if he could talk to him for a moment...."); *Zubizareta,* 122 Idaho at 828, 839 P.2d at 1242 ("[T]here is no doubt that the officer requested Zubizareta to turn off the motor, as opposed to ordering him to do so. There was no sign of force or authority beyond the officer's uniform to require Zubi-

zareta to submit or to limit his ability to refuse. A parallel situation occurred when the officer asked Zubizareta to roll down the window. The request was not a seizure, although an order may have been.... Only when [the officer] told Zubizareta to remain seated did the fourth amendment apply."); *accord* LaFAVE, SEARCH AND SEIZURE § 9.4(a) at 433. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response. *State v. Nelson,* 134 Idaho 675, 679, 8 P.3d 670, 674 (Ct.App.2000). Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification, but they may not make a demand. *Fry,* 122 Idaho at 102, 831 P.2d at 944. As long as police do not convey a message that compliance with a request is required, the encounter is deemed consensual and no reasonable suspicion is necessary. *Fry,* 122 Idaho at 102, 831 P.2d at 944. Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights are infringed. *Royer,* 460 U.S. at 498, 103 S.Ct. at 1324, 75 L.Ed.2d at 236–37.

 The burden of proving that a seizure occurred is on the defendant seeking to suppress evidence allegedly obtained as a result of an illegal seizure. *Page,* 140 Idaho at 843, 103 P.3d at 456; *State v. Reese,* 132 Idaho 652, 654, 978 P.2d 212, 214 (1999); *State v. Fuentes,* 129 Idaho 830, 832, 933 P.2d 119, 121 (Ct.App.1997). Taking into account all the surrounding circumstances, the critical inquiry is whether a reasonable person would have felt free to disregard the police, decline the officer's request or otherwise terminate the encounter. *Page,* 140 Idaho at 843–44, 103 P.3d at 456–57; *Nickel,* 134 Idaho at 613, 7 P.3d at 222; *Reese,* 132 Idaho at 653, 978 P.2d at 213; *Gutierrez,* 137 Idaho at 650, 51 P.3d at 464; *Nelson,* 134 Idaho at 679, 8 P.3d at 674; *State v. Pick,* 124 Idaho 601, 604, 861 P.2d 1266, 1269 (Ct. App.1993); *Jordan,* 122 Idaho at 774, 839 P.2d at 41; *Fry,* 122 Idaho at 103, 831 P.2d at 945. We must determine whether the circumstances of an encounter are "so intimi-

dating as to demonstrate that a reasonable person would have believed he [or she] was not free to leave if he [or she] had not responded." *Nelson*, 134 Idaho at 678, 8 P.3d at 673 ("[M]erely motioning a person to approach a police officer, unaccompanied by verbal communication or show of force, is not inherently coercive."). Compare *State v. Bainbridge*, 117 Idaho 245, 248, 787 P.2d 231, 234 (1990) ("At this point *no* reasonable person would have thought they were free to leave. The officers' "suggestion" [to go to the station house] not only reflected a desire for immediate action, but it directed the course of action to be taken.") *with Nickel*, 134 Idaho at 613, 7 P.3d at 222 (course was not altered by officer because vehicle was already parked and police did not prevent the citizen from departing). Our critical inquiry presupposes an innocent person, which ensures that the scope of Fourth Amendment protection does not vary according to a citizen's state of mind. *Nelson*, 134 Idaho at 679, 8 P.3d at 674. Thus, the hallmark of a seizure is the objective element of compulsion to regard the police, honor an officer's request or continue the police-citizen encounter. *State v. Ferreira*, 133 Idaho 474, 480, 988 P.2d 700, 706 (Ct.App.1999).

When the deputy told Cardenas "he needed to come speak to [the deputy]," under the circumstances, Cardenas was seized. As in *Zubizareta* and *McAfee*, the officer's language was inherently coercive such that reasonable people would not believe they were free to go about their business. Because it was the result of an unlawful command, the initial contact was not consensual. We hold that the initial detention of Cardenas was unlawful because it was not supported by reasonable suspicion. Accordingly, Cardenas' consent to search, given during the unlawful detention, was invalidated by taint of illegality, and the stolen checkbooks were the unattenuated fruit of the illegal detention. *See Gutierrez*, 137 Idaho at 653, 51 P.3d at 467; *State v. Zavala*, 134 Idaho 532, 536, 5 P.3d 993, 997 (Ct.App.2000).

**B. The State Waived Cardenas' Standing to Contest Search of the Automobile**

The state argues on appeal for the first time that because Cardenas did not demonstrate that he possessed a reasonable expectation of privacy in the vehicle, he does not have standing to contest the vehicle search. In *Hanson*, decided after Cardenas' suppression hearing, we held that a defendant's standing to contest the validity of a search may be challenged for the first time on appeal. *State v. Hanson*, 142 Idaho 711, 719, 132 P.3d 468, 476 (Ct.App.2006). *Hanson* suggested, however, that we will permit the government to challenge a defendant's standing initially on appeal only so long as it has not previously taken a contrary position or otherwise affirmatively waived the claim. *Id.* at 719, 132 P.3d at 476. In the instant case, the state's position at the suppression hearing—that the search was based on consent—is inconsistent with the position taken on appeal that Cardenas was not authorized to control the vehicle searched. Consequently, the state has waived the issue of standing. The state's new position is also contrary to the evidence demonstrating permission by the vehicle's owner for Cardenas' use of the vehicle.

**C. The State Failed to Prove the Search Warrant was Not Obtained by Tainted Evidence**

The state argues that, absent a showing by the defendant that the warrant was illegally obtained, the district court lacked any basis for invalidating the warrant and suppressing its evidentiary fruits. Contrarily, because Cardenas showed that the police's decision to obtain a warrant was prompted by evidence found in an initial, unlawful search of the vehicle's glove box, it was the prosecution's burden to show that the warrant was supported by lawfully obtained evidence. The illegal detention of Cardenas "add[ed] to the [state's] normal burden of convincing a magistrate that there is probable cause the much more onerous burden of convincing a trial court that *no information gained from the illegal[ity] affected ... the magistrate's decision to grant it." Murray v. United States*, 487 U.S. 533, 540, 108 S.Ct. 2529, 2534–35, 101 L.Ed.2d 472, 482 (1988) (emphasis added); *State v. Soto*, 127 Idaho 324, 326, 900 P.2d 800, 802

(Ct.App.1995); *see also* LaFave § 11.2(b), 11.4(f) at n. 335 ("The burden of proof is on the prosecution to establish an independent source."). Because Cardenas demonstrated a *prima facie* causal connection between the police misconduct and the evidence, the burden of proof shifted to the government to show that the unlawful conduct did not taint the evidence, either by demonstrating discovery through independent means, inevitable discovery, or attenuation from the illegality sufficient to dissipate its taint. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441, 455 (1963); *State v. Babb,* 136 Idaho 95, 98, 29 P.3d 406, 409 (Ct.App.2001). The state failed to do so.

■ Although there is a presumption of regularity normally associated with warrants, that presumption is burst by the irregularity of tainted evidence. The mere fact that a magistrate later attends to the probable cause finding does not make for an independent source or an intervening circumstance. Rather, the state must show that the information presented to the magistrate, excluding the tainted evidence, was sufficient to establish probable cause for issuance of the warrant. *See State v. Revenaugh,* 133 Idaho 774, 779, 992 P.2d 769, 774 (1999). In this case, the state failed to put the warrant affidavit into evidence at the suppression hearing, let alone make the appropriate showing. There is no basis on which we can find untainted facts supporting probable cause. Thus, the exclusionary rule also bars the use at trial of the marijuana, amphetamine, drug paraphernalia, and hand gun evidence. To the extent that language in *State v. Bunting,* 142 Idaho 908, 136 P.3d 379 (Ct.App.2006) and *Woodward v. State,* 142 Idaho 98, 123 P.3d 1254 (Ct.App.2005) could be read as inconsistent with this opinion, our present holding controls.

### D. The District Court Erred by Suppressing Cardenas' Statements Made After Miranda Warnings

■ The state concedes that the district court properly suppressed Cardenas' initial admission that the marijuana cigarette was his. Cardenas was handcuffed, in custody and being interrogated at the time of his first admission. The state agrees that the deputy should have advised Cardenas of his rights, pursuant to *Miranda,* before interrogation. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07. The state contends, however, that the district court erred by suppressing Cardenas' later admissions made after *Miranda* warnings, i.e., his statements about the handgun, about his possession of the marijuana-filled shopping bag, and how he had acquired the marijuana joint found under the car. The district court suppressed the postwarning statements after finding that there was an insufficient lapse of time between the unlawful detention of Cardenas and his statements.

On appeal, the state argues that the initial unwarned interrogation notwithstanding, Cardenas' later admissions should not be excluded under *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). We agree. In *Elstad,* a burglary suspect made an initial incriminating statement in his home, without first being given a *Miranda* warning, then later at the police station made a full confession, after receiving a proper *Miranda* warning and waiving his rights. He later argued that the second statement should be suppressed because it was related to the unwarned first statement and likely was induced or caused by it. *Elstad* at 302, 105 S.Ct. at 1289, 84 L.Ed.2d at 227–29. The United States Supreme Court rejected that argument. In holding the second statement admissible and voluntary, the Court reasoned that:

> ... absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.

*Elstad,* at 314, 105 S.Ct. at 1296, 84 L.Ed.2d at 235. The Court further observed:

> It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculat-

ed to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary informed waiver is ineffective for some indeterminate period.

*Id.* at 309, 105 S.Ct. at 1293, 84 L.Ed.2d at 232.

Here, as in *Elstad,* the deputy's pre-*Miranda* interrogation regarding the marijuana cigarette was "a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine [Cardenas'] ability to exercise his free will." More than three hours later, at the jail, a detective advised Cardenas of his *Miranda* rights before questioning him, and Cardenas waived his rights freely and voluntarily. As in *Elstad,* the subsequent administration of *Miranda* warnings at the jail sufficed to remove the conditions that precluded admission of Cardenas' unwarned statement to the deputy at the scene of the arrest. There is no evidence that Cardenas' statements were extracted by threats or violence, or obtained by any direct or implied promises. *See State v. Cherry,* 139 Idaho 579, 83 P.3d 123 (Ct.App.2003); *State v. Nobles,* 122 Idaho 509, 512, 835 P.2d 1320, 1323 (Ct.App.1991). Nor is there any evidence in this case that the police tried to circumvent *Miranda* by questioning Cardenas at length without warnings, then giving him warnings once they had a confession and continuing the questioning until they elicited a second, warned confession to use against him. The Supreme Court rejected that kind of abusive "question first" tactic in *Missouri v. Seibert,* 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), distinguishing it from *Elstad.* Because the *Miranda* warnings in this case were not "inserted in the midst of coordinated and continuing interrogation," or "in two spates of integrated and proximately conducted interrogations" punctuated by *Miranda* warnings in the middle, we conclude that *Elstad* controls here and *Seibert* does not apply. *See Seibert,* 542 U.S. at 613–17, 124 S.Ct. at 2610–13, 159 L.Ed.2d at 655–58. Our conclusion is consistent with established precedent announced by Idaho appellate courts. *See State v. Windsor,* 110 Idaho 410, 716 P.2d 1182 (1985), *State v. McLean,* 123 Idaho 108, 844 P.2d 1358 (Ct.App.1992); and

*Nobles,* 122 Idaho 509, 835 P.2d 1320. As we have noted, our holding in *Nobles* "turned on the lack of any evidence to suggest that the officers exploited the unwarned statement to pressure Nobles into waiving his right to remain silent in confessing a second time." *McLean,* 123 Idaho at 113, 844 P.2d at 1363 (citing *Nobles,* 122 Idaho at 513, 835 P.2d. at 1324). In that case the *Miranda* warnings were effective. *See also Windsor,* 110 Idaho at 415, 716 P.2d at 1187 (finding admissibility of a confession under circumstances where prewarning statement was not used to undermine the subsequent warning).

▮ Because there is no evidence that Cardenas' first statement was involuntarily given to the police in violation of the Fifth Amendment, the only "but-for" illegality for purposes of a deterrence-based exclusionary rule is the detention of Cardenas. *See Elstad,* 470 U.S. at 305–06, 105 S.Ct. at 1290–91,84 L.Ed.2d at 229–30. *Cf. State v. Harms,* 137 Idaho 891, 896, 55 P.3d 884, 889 (Ct.App. 2002) (applying the fruit of the poisonous tree doctrine under the Fifth Amendment where a defendant's unwarned statement was *involuntary* ). Unless the causal connection between the unlawful detention and the statement has been broken, Cardenas' statements would be excluded as tainted fruit. *See Elstad,* 470 U.S. at 304, 105 S.Ct. at 1290, 84 L.Ed.2d at 228–29; *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *State v. Bainbridge,* 117 Idaho 245, 248–49, 787 P.2d 231, 234–35 (1990). The state bears the burden of showing the attenuation such that the statements were sufficiently an act of free will purging the primary taint. *State v. Zavala,* 134 Idaho 532, 537, 5 P.3d 993, 998 (Ct.App.2000). *Miranda* warnings alone do not render the statements admissible at trial. *Bainbridge,* 117 Idaho at 252, 787 P.2d at 238. When analyzing whether the state has met this burden, we consider the temporal proximity of the unlawful police conduct and the statement, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *Id.* at 250–52, 787 P.2d at 236–38. "The last of

the three factors ... is particularly important because it comes closest to satisfying the deterrence rationale for application of the exclusionary rule." *Id.* at 252, 787 P.2d at 238.

We hold that the state met its burden of showing that the connection between the illegal detention and initial interrogation of Cardenas and his subsequent *Mirandized* statements was broken by the three-hour time lapse, the effective *Miranda* warning properly given by the police, and the absence of egregious official misconduct. The district court should not have suppressed the statements made after Cardenas received the *Miranda* warnings.

## IV.

## CONCLUSION

The officer contact with Cardenas constituted an illegal detention, not a consensual encounter, and the state waived any contention that Cardenas lacked standing to contest the search of the vehicle. Additionally, the state failed to prove that the initial illegality did not taint the subsequent warrant to search the entire vehicle. The order granting Cardenas' motion to suppress the physical evidence is affirmed. The district court erred, however, in suppressing Cardenas' statements made after the *Miranda* warnings. The case is remanded for further proceedings.

Chief Judge PERRY and Judge LANSING concur.