**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45694**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: November 28, 2018 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| SHANNON MARIE OLVERA, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

Judgment of conviction for possession of a controlled substance, vacated.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Judge

Shannon Marie Olvera appeals from her judgment of conviction for possession of a controlled substance. Olvera challenges the district court's order denying her motion to suppress. For the reasons set forth below, we vacate.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officers encountered Olvera while she was in her car outside the gate of a storage unit. During the course of the encounter, Olvera admitted using methamphetamine a few hours prior and a search of her car revealed methamphetamine. The State charged Olvera with possession of a controlled substance. I.C. § 37-2732(c). Olvera filed a motion to suppress, alleging she was unlawfully seized in violation of the Fourth and Fourteenth Amendments to the United States

1

Constitution and Article I, Section 17 of the Idaho Constitution when the officer "blocked her in at a dead-end of a parking lot and ordered her to put her car into park." Olvera testified at the suppression hearing and the video of the officers' interaction with Olvera was admitted as an exhibit. At the conclusion of the suppression hearing, the district court denied Olvera's motion. Olvera thereafter entered a conditional guilty plea to possession of a controlled substance, reserving her right to challenge the denial of her motion to suppress. The district court withheld judgment and placed Olvera on probation for five years. Olvera appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Olvera contends that the district court erred in denying her motion to suppress because the evidence showed that she was unlawfully seized in violation of the Fourth Amendment.[1] The State responds that Olvera failed to meet her burden of showing an unlawful seizure and that *State v. Randle*, 152 Idaho 860, 276 P.3d 732 (Ct. App. 2012), is indistinguishable and supports the district court's order denying Olvera's suppression motion. We hold that Olvera's motion to suppress should have been granted.

The Fourth Amendment to the United States Constitution guarantees the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16

---

[1] Although Olvera also cited the Idaho Constitution in support of her motion to suppress, her argument on appeal is based solely on the Fourth Amendment.

(1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions, or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.* Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *Id.* Importantly, the critical inquiry is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he or she was not at liberty to ignore the police presence and go about his or her business. *Bostick*, 501 U.S. at 436.

The United States Supreme Court, in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), stated:

> Examples of circumstances that might indicate seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Other circumstances that may indicate a seizure include whether an officer used overhead emergency lights or took action to block a vehicle's exit route. *State v. Willoughby*, 147 Idaho 482, 487-88, 211 P.3d 91, 96-97 (2009); *State v. Schmidt*, 137 Idaho 301, 302-03, 47 P.3d 1271, 1272-73 (Ct. App. 2002); *Fry*, 122 Idaho at 103, 831 P.2d at 945.

In *Randle*, a police officer parked his patrol car approximately two car lengths behind Randle after observing Randle's vehicle alone in a parking lot with its front end abutting a grassy

3

knoll. The officer left his headlights on as he approached Randle's vehicle and knocked on the driver's window. Randle opened his door and the officer noticed two open beer cans in the vehicle. Randle was ultimately charged with driving under the influence. Randle filed a motion to suppress, alleging he was seized without reasonable suspicion when the officer parked behind Randle's vehicle, left the patrol car's headlights on, approached the vehicle, and knocked on the window. The district court denied Randle's motion to suppress, finding the encounter was consensual. On appeal, this Court affirmed the district court, holding that Randle was not seized when the officer parked behind Randle's vehicle and knocked on the window because such conduct would not have communicated to a reasonable person that he or she was not at liberty to ignore the officer's presence and go about his or her business. *Randle*, 152 Idaho at 866, 276 P.3d at 738.

In this case, the video of the encounter between Olvera and law enforcement showed Olvera's car stopped outside the gate of a storage facility with the headlights on and her car running. Two officers in a patrol car parked some distance away from Olvera's car and approached Olvera.[2] When the officers approached Olvera's car, her window was rolled down. While one officer was standing by the passenger side of Olvera's car and shining his flashlight into the car's interior, the other officer initiated the following exchange with Olvera:

Officer: Hello.
Olvera: Hi.
Officer: Hi. Can you put your car in park for me?
Olvera: Um, Yeah. I'm waiting for uh . . .
Officer: Perfect. Thank you. What are you back here doin'?

Olvera explained that she was helping someone whose property was in storage. During the subsequent discussion, the officer asked Olvera if she had any identification and asked her to "grab it for him," which Olvera did. The officer also asked Olvera why she turned around and drove back toward the storage area after she saw them and asked Olvera if she thought that behavior was "kind of odd." During their conversation, the officer twice asked Olvera to stop

---

[2]     The district court declined to make a factual finding regarding how much space there was in relation to whether Olvera could have driven away other than finding there was "clearly room beside the police officer, and he's clearly parked as close to the curb" as he could get. However, the district court acknowledged that, on cross-examination, Olvera agreed that there was sufficient room for her to back up, turn around, and leave.

"digging around" in the car. After the second request, the officer told Olvera it was the last time he was going to ask her and indicated that, if she continued to "dig around," he was going to ask her to step out of the car. The officer next asked Olvera if she was back there using drugs and if there were any drugs in her car. Olvera answered "no" to both questions. The officer then told Olvera to "hang tight for a couple of minutes" and asked if they could look for drugs in her car. Olvera agreed, but asked if she could call her friend who was inside the storage facility. The officer responded: "In just a couple of minutes, we'll get that sorted out. Ok." Shortly thereafter, the officer asked Olvera when she last used methamphetamine and Olvera said she used a few hours prior.[3]

The district court found that the encounter between Olvera and the officers was not a seizure, concluding that a reasonable person in Olvera's position could have asked to leave or said, "I want to leave." The district court also concluded that the facts of this case were indistinguishable from *Randle*. Under the applicable legal standard, these two findings are subject to free review. *See Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Taking into account all of the circumstances surrounding the encounter, we conclude that the police conduct in this case would have communicated to a reasonable person in Olvera's position that she was not at liberty to ignore the police presence and go about her business. *See Bostick*, 501 U.S. at 436.

Even if there was room for Olvera to drive away when the officers approached her running vehicle, a reasonable person in Olvera's circumstances would not have felt free to leave in light of the officer's questions and directives. Although it is well established that officers may ask to examine identification without reasonable suspicion, we have held that, when an individual is sitting in the driver's seat of a car with the engine running, I.C. § 49-316 requires the individual to respond to an officer's request for a driver's license. *State v. Osborne*, 121 Idaho 520, 526-27, 826 P.2d 481, 487-88 (Ct. App. 1991). Further, although the officer who spoke with Olvera had a pleasant tone, his questions were accusatory and his directives were nonnegotiable. That officer directed Olvera's movements, including telling Olvera that she was going to be asked to step out of the car if she continued to "dig around." Such directives implicate the Fourth Amendment and communicate to a reasonable person that she is not free to

---

[3] At the suppression hearing, Olvera conceded that there was reasonable suspicion to detain her after she admitted using methamphetamine.

5

go about her business. *See State v. Zubizareta*, 122 Idaho 823, 828, 839 P.2d 1237, 1242 (Ct. App. 1992) (concluding that the Fourth Amendment applied when an officer told the occupant of a car to remain seated, but finding the request permissible because the officer had detected a strong odor of alcohol on the occupant's breath). The officer's inquiries as to what Olvera was doing at the storage unit, asking whether she was using drugs, asking her when she last used drugs, telling her to "hang tight," and denying her request to call her friend did not give Olvera the option of not answering the officer's questions or the option of complying with his directives. *Compare State v. Cardenas*, 143 Idaho 903, 908, 155 P.3d 704, 709 (Ct. App. 2006) (holding that the officer telling the defendant that he needed to come speak to the deputy constituted a seizure); *State v. Fry*, 122 Idaho 100, 103, 831 P.3d 942, 945 (Ct. App. 1991) (noting that, unlike other cases in which police request cooperation in answering questions, the officer's request for an individual's driver's license and an inquiry about what the subject was doing did not give the defendant the option of answering). For these reasons, we conclude *Randle* is factually distinguishable and hold that Olvera was seized within the meaning of the Fourth Amendment. Therefore, Olvera's motion to suppress should have been granted.

## IV.

## CONCLUSION

Because we hold that Olvera was seized within the meaning of the Fourth Amendment, the district court erred in denying Olvera's motion to suppress. Therefore, Olvera's judgment of conviction for possession of a controlled substance is vacated.

Judge GUTIERREZ and Judge HUSKEY, **CONCUR**.