831 P.2d 942

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Roger FRY, Defendant-Appellant.**

No. 18645.

Court of Appeals of Idaho.

Oct. 8, 1991.

Rehearing Denied Jan. 13, 1992.

Petition for Review Denied June 17, 1992.

Brian E. Elkins, Ketchum, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, argued for plaintiff-respondent.

WALTERS, Chief Judge.

Roger Fry was convicted of DUI and possession of cocaine based upon evidence obtained during an encounter with police that occurred while Fry was sitting in his parked vehicle. On appeal, Fry contends that the police conduct violated the fourth amendment's guarantee against unreasonable searches and seizures, and that the district court erred in denying his motion to suppress. As explained below, we vacate Fry's convictions on the basis of the court's erroneous rulings.

### Facts

The following facts as found by the district court are uncontested. On a Friday night in April, 1989, at around midnight, Roger Fry and his passenger were sitting in Fry's pick-up truck, which was parked in a lot in downtown Ketchum, Idaho. Other vehicles were also parked in the lot, and numerous pedestrians were walking along nearby sidewalks. Ketchum Police Officer Sergeant Compton was patrolling the area in a police vehicle when he observed the parked vehicle and its two occupants. Compton drove a short distance from the lot and reported the vehicle to Officers Dunbar and Wilson, who were on foot patrol at the time. Compton told the two officers to see "what their behavior is, what they are up to." Dunbar and Wilson then proceeded to within a block of the lot and watched as Fry started his vehicle and attempted, unsuccessfully, to pull out of the parking space. The vehicle moved forward a few feet, then backward, forward again, and then jerked to a stop. Officer Wilson suggested that Officer Dunbar approach the vehicle to "see what might be going on." Fry's passenger looked out the window and saw that Wilson was advancing toward them. Fry noticed Officer Wilson, and, as Fry restarted his vehicle, Officer Wilson tapped on the closed driver's window. When Wilson knocked on the window, the engine was running. By this time, Officer Dunbar had walked to the vehicle and stood behind it, preventing Fry from driving away. When Fry rolled down the window, Wilson asked Fry what he was doing and if he could have his driver's license, which Fry produced. Wilson also detected the odor of alcohol and then had Fry perform a series of field sobriety tests. Based upon his observations, Wilson arrested Fry for driving under the influence [1] and took him into police custody. The officers' subsequent search of the vehicle produced two cocaine "bindles."

Based upon this evidence, Fry was charged with driving while under the influence and with possession of cocaine. Fry moved to suppress the evidence on fourth amendment grounds. The district court denied the motion, ruling that the police en-

---

**1.** Idaho Code § 18–8004, defining the crime of driving under the influence, makes it a crime to drive *or be in actual physical control* of a motor vehicle while under the influence of alcohol. *See In re Clayton,* 113 Idaho 817, 748 P.2d 401 (1988).

counter was reasonable as an investigative stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and, alternatively, that the encounter was a reasonable exercise of the officers' "community caretaking function." [2] *See In re Clayton, supra.* The factors which the district court noted were:

1. Prior to the stop, Officer Compton observed a truck, late at night, displaying guns in the gun rack and observed the passenger's interest in his presence.

2. Officers Wilson and Dunbar observed the truck pull forward and back within the parking space at least two times, ending with the truck stalling. This occurred during a two-minute period of observation.

3. Officer Wilson then went around the other corner of the drug store and upon his arrival was spotted by the occupants of the truck.

4. Defendant started the truck immediately after seeing Officer Wilson.

5. All of the above events occurred around the midnight hour on a weekend.

6. Prior to this occasion, there has been 67 property crimes in Ketchum and 28 commercial property crimes in less than a two-month period.

The court further ruled that the subsequent vehicle search also was constitutionally valid. Following the denial of his motion, Fry entered a conditional plea of guilty to each charge, reserving his right to appeal the court's rulings. I.C.R. 11(a)(2).

Fry does not dispute the sufficiency of the information gained *during* the police encounter to support his arrest for DUI. Rather, he claims that the officers' *initial detention* of him, accomplished before he rolled down the vehicle's window, violated the fourth amendment's guarantee against unreasonable seizures. Fry contends that, as a consequence of the invalid conduct, the officers' observations made during the encounter, and the cocaine discovered during the subsequent vehicle search, should have

been suppressed as "tainted fruits" under the exclusionary rule. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Because the issues presented do not involve disputed facts, but rather present questions of law, we will exercise free review. *In re Matter of McNeely*, 119 Idaho 182, 804 P.2d 911 (Ct. App.1990).

### Was There a "Seizure" within the Meaning of the Fourth Amendment?

■ ·Preliminarily, we note that law enforcement practices are not required by the fourth amendment to be reasonable unless they are either "searches" or "seizures." Unless Fry was "seized" within the meaning of the constitution, the police encounter need not be justified by a reasonable suspicion. Thus, we begin our analysis by determining whether Fry was "seized."

■ A seizure does not occur simply because a police officer approaches an individual on the street or other public place and asks a few questions. *Florida v. Bostick*, —— U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Florida v. Rodriguez*, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *State v. Zapp*, 108 Idaho 723, 701 P.2d 671 (Ct.App.1985). So long as police do not convey a message that compliance with their requests is required, the encounter is deemed "consensual" and no reasonable suspicion is required. *See, e.g., Bostick, supra.* A seizure occurs— and the fourth amendment is implicated— when an officer, by means of physical force or show of authority, has in some way restrained a citizen's liberty. *Bostick*, ——

---

**2.** In its decision in this case, the district court held that the defendant had the burden of proving improper police conduct in a motion to suppress. At oral argument on this appeal, the state conceded that the district court's ruling

was in error. However, the state argued further that the result obtained by the court, i.e., suppression of the evidence, was correct and should be sustained on that basis, regardless of the improper ruling.

U.S. at ——, 111 S.Ct. at 2386; *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). The critical inquiry is whether, taking into account all of the circumstances surrounding the encounter, "the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Bostick*, —— U.S. at ——, 111 S.Ct. at 2387, *quoting Michigan v. Chesternut*, 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565 (1988). *See also California v. Hodari*, —— U.S. ——, ——, 111 S.Ct. 1547, 1547, 113 L.Ed.2d 690 (1991).

▆ In the instant case, the state argues that Fry "voluntarily" rolled down his window at Officer Wilson's request. The state points to the fact that the officer displayed no weapons or other show of force, and maintains that the officer simply sought Fry's cooperation in answering his questions. Officer Wilson, fully dressed in his police officer's uniform, knocked on the window of Fry's pickup. Fry rolled down the window and Wilson asked Fry what he was doing and if Wilson could have his driver's license. Unlike other cases in which the police request the subject's cooperation in answering questions, the inquiry here as to what Fry was doing did not give Fry the option of answering or not. In addition, the state's characterization of this encounter ignores the significant fact that, at the time Officer Wilson approached the driver's window, Officer Dunbar had placed himself directly behind Fry's vehicle, the front end of which was nearly against the wall of a building, making it impossible for Fry to drive away without running over Officer Dunbar. *Compare United States v. Rose*, 889 F.2d 1490, 1493 (6th Cir.1989) (D.E.A. agents in civilian clothing asked driver of vehicle to turn off engine; driver's compliance deemed voluntary.) We conclude that the police conduct in this case "would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Accordingly, we hold that Fry was "seized" within the meaning of the fourth amendment.

### Was the seizure "reasonable?"

▆ Not all seizures of the person need be justified by probable cause to arrest for a crime. A police officer may, in appropriate circumstances and in an appropriate manner, detain a person for purposes of investigating possible criminal behavior, even though there is no probable cause to make an arrest. *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880. However, in order to pass constitutional muster, an investigatory seizure, or "stop," must be justified by a reasonable, articulable suspicion on the part of the police that the person to be seized had committed or was about to commit a crime. *Florida v. Royer, supra*, 460 U.S. at 491, 103 S.Ct. at 1319; *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Whether an officer had the requisite reasonable suspicion to detain a citizen is determined on the basis of the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *State v. Johns*, 112 Idaho 873, 887, 736 P.2d 1327, 1241 (1987). Based upon the "whole picture," the detaining officer must have a particularized and objective basis for suspecting the person stopped of criminal activity. *Mason v. State Dept. of Law Enforcement*, 103 Idaho 748, 750, 653 P.2d 803, 805 (Ct.App.1982).

▆ In addition to the facts recited above, the district court found that the Fry's vehicle exhibited guns in its gun rack. The court further found that, prior to this incident, there had been sixty-seven property crimes in Ketchum and twenty commercial property crimes in less than a two-month period. Fry argues that neither these facts, nor any other evidence produced at the suppression hearing, were sufficient to provide Officers Wilson and Dunbar with the level of articulable suspicion to justify the seizure. We agree.

Our review of the officers' testimony in this case reveals that, prior to their encounter with Fry, they possessed no objective basis for believing that Fry had violated any criminal statute or was otherwise about to engage in criminal activity. The

officers' observations yielded nothing to implicate Fry in the recent rash of property crimes. Having a gun rack in one's vehicle does not reasonably give rise to the suspicion that one is about to engage in criminal conduct. The fact that Fry attempted to leave when he saw the officers does not, without more, supply the officers with a reason to conclude that crime was afoot. Moreover, the "unusual fashion" in which Fry operated his vehicle was in no way indicative of crime. Nor can we say that these facts, combined, give rise to a particularized suspicion of criminal activity. At the very most, these facts show that Fry was having difficulty with his vehicle's reverse gear, and that he did not wish to confer with the officers. Absent articulable circumstances reasonably suggesting crime, we must reverse the district court's ruling that the seizure was a permissible investigative stop.

### Is the "community caretaking function" analysis applicable?

 Finally, we address the district court's alternative ruling that the officers' conduct was within their "community caretaking function" and as such did not constitute a seizure in violation of the fourth amendment. As characterized in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), an officer's community caretaking functions are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441, 93 S.Ct. at 2528 (cited in *In re Clayton, supra*).

We conclude that the record in this case does not support the district court's determination. We note that neither Officers Wilson nor Dunbar entertained a belief that Fry needed police assistance, nor did they perceive a medical emergency or other exigency compelling their immediate action. *See State v. McAfee*, 116 Idaho 1007, 783 P.2d 874 (Ct.App.1989). Rather, it is plain from the officers' testimony that their purpose in encountering Fry was related to their subjective suspicions of Fry's presence and his possible connection with the recent burglaries. Moreover, the fact that

Officer Dunbar placed himself directly behind Fry's vehicle, effectively prohibiting Fry from driving away, belies any claim that the officers approached Fry for the purpose of merely rendering vehicle assistance. We hold, therefore, that the "community caretaking function" analysis is inapplicable to this case, and the district court's alternative ruling to the contrary must be reversed.

### Conclusion

For the reasons above, we hold that Fry was unreasonably seized in violation of the fourth amendment, and that the district court erroneously denied Fry's motion to suppress. Accordingly, we vacate Fry's judgments of conviction and remand the case for further proceedings.

SILAK, J., and FULLER, J. Pro Tem., concur.