**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45606**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: January 22, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JOHN LEROY PENA, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Nancy A. Baskin, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Lara E. Anderson, Deputy Appellate Public Defender, Boise, for appellant. Lara E. Anderson argued.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent. Ted S. Tollefson argued.

---

LORELLO, Judge

John Leroy Pena appeals from his judgment of conviction for possession of a controlled substance. Pena challenges the district court's order denying his motion to suppress. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

An officer encountered Pena at 3:15 a.m. while Pena was in a dark area of a hotel parking lot, sitting in a parked car with the engine running and the lights off. The officer parked seven to ten feet behind Pena's car, but did not activate the patrol car's overhead lights. As the officer exited his patrol car, Pena exited his vehicle and engaged in conversation with the officer. During the course of the encounter, the officer learned Pena was on parole and saw that Pena had a glass object with white residue that resembled a methamphetamine pipe. The officer requested

1

an assist officer and subsequently arrested Pena. While Pena's hands were being placed behind his back, Pena threw the glass object on the ground. The officer retrieved the glass object, which was a pipe that contained a substance that tested positive for methamphetamine. During a search incident to arrest, the officer also found a bag of methamphetamine in Pena's pocket.

The State charged Pena with possession of a controlled substance, I.C. § 37-2732(c), and possession of drug paraphernalia, I.C. § 37-2734A. Pena filed a motion to suppress, alleging he was detained without reasonable suspicion; even if the detention was lawful, it was prolonged beyond what was necessary to effectuate the purpose of the detention; and the consent to search provision in Pena's parole supervision agreement did not justify the detention and subsequent search because the officers were unaware of the provision at the time of the detention and unaware of the scope of the provision at the time of the search. Following the suppression hearing, the district court issued a written decision denying Pena's motion, concluding the initial encounter between Pena and the officer was consensual and that Pena was not detained until the officer had reasonable suspicion that Pena possessed paraphernalia. Pena thereafter entered a conditional guilty plea to possession of a controlled substance, reserving his right to challenge the denial of his motion to suppress. In exchange for his guilty plea, the drug paraphernalia charge was dismissed. The district court sentenced Pena to a unified term of two years, with a minimum period of confinement of one year, to run concurrently with an unrelated sentence. The district court suspended Pena's sentence and placed him on probation. Pena appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

2

Pena contends that the district court erred in denying his motion to suppress because the evidence showed that his encounter with the officer was not consensual and that Pena was detained without reasonable suspicion. Pena further contends that, even if his detention was lawful, it was unlawfully prolonged and his parole status did not justify a warrantless seizure or search. The State responds that the district court correctly concluded that the encounter was consensual and that, even if the encounter was not consensual, the officer had reasonable, articulable suspicion to detain Pena. Pena has failed to show any error in the district court's conclusion that the encounter was consensual.

The Fourth Amendment to the United States Constitution and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions, or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.* Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *Id.* Importantly, the critical inquiry is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person

that he or she was not at liberty to ignore the police presence and go about his or her business. *Bostick*, 501 U.S. at 436.

The United States Supreme Court, in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), stated:

> Examples of circumstances that might indicate seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Other circumstances that may indicate a seizure include whether an officer used overhead emergency lights or took action to block a vehicle's exit route. *State v. Willoughby*, 147 Idaho 482, 487-88, 211 P.3d 91, 96-97 (2009); *State v. Schmidt*, 137 Idaho 301, 302-03, 47 P.3d 1271, 1272-73 (Ct. App. 2002); *Fry*, 122 Idaho at 103, 831 P.2d at 945.

The following facts were found by the district court. At approximately 3:15 a.m., an officer was on routine patrol when he noticed a car parked in a dark area of a hotel parking lot, far from any guest entrances. The car was running and its lights were off. Because the officer had made multiple drug arrests in that area, he decided to investigate whether potential criminal activity was underway. The officer drove past the vehicle, checked its license plate, and then parked his patrol car about seven to ten feet behind the vehicle. The officer did not activate the patrol car's overhead lights. As the officer exited his patrol car, Pena exited his vehicle with his hands in his pockets. The officer asked Pena why he was there, and Pena replied that he was picking up a friend at a nearby hotel. Although Pena provided his friend's name, he could not provide the name of the hotel.

Pena provided identification, but declined the officer's request to check Pena's pockets for weapons. Pena did not, however, object when the officer used a flashlight to look through Pena's car windows. When the officer looked in the windows, he noticed a saw in the backseat. During Pena's conversation with the officer, Pena admitted he was on parole for burglary and stated he did not think a Fourth Amendment waiver was included as one of his parole conditions.

After the officer checked Pena's identification and determined he did not have any outstanding warrants, the officer returned Pena's identification and told him he was free to leave. A few seconds later, the officer said, "I saw that you stuffed a little tissue in your pockets. Is

4

there anything in that tissue?" In response, Pena reached into his left sweatshirt pocket and moved his hand around in the pocket. The officer then asked Pena, "Can you put it on the hood for me?" Pena fumbled around in his pocket for approximately twenty-five seconds, removed multiple items, placed the tissue in his right hand, and quickly returned his left hand to his pocket. In the meantime, the officer saw that the item Pena returned to his pocket was a bulbous glass object with white residue on it, resembling a pipe used to smoke methamphetamine. The officer then called a second officer to assist and no longer considered Pena free to leave. Prior to the arrival of the second officer, Pena was again asked the name of the friend he was picking up. This time, Pena paused for several seconds before providing a different name than he previously gave.

While Pena was being arrested, the officers attempted to put Pena's hands behind his back. Pena then removed the glass object from his pocket and threw it on the ground. The glass pipe contained a substance which tested positive for methamphetamine. Pena also had a bag of methamphetamine in his pocket.

The district court denied Pena's motion to suppress, concluding that the initial encounter between Pena and the officer was consensual because the officer did not employ any show of force or authority to restrain Pena's liberty. On this point, the district court noted that: (1) the officer parked several feet away from Pena, leaving sufficient room for Pena to leave if he chose to do so; (2) the officer did not activate his overhead lights; (3) the officer was alone when he approached Pena and did not request assistance until he saw Pena's pipe; (4) the officer did not draw his weapon or touch Pena; (5) the officer spoke to Pena "in a casual and conversational tone"; (6) the officer's question about the tissue in Pena's pocket was phrased and sounded like a question, not a command; and (7) the officer returned Pena's identification and told him he was free to go after determining he did not have any outstanding warrants. Based on the totality of these circumstances, the district court concluded a reasonable person would have felt free to leave.

The district court further concluded Pena was not detained until the officer noticed the glass pipe, which provided reasonable suspicion for the detention. The district court explained that Pena "could have declined the officer's request to remove the tissue from his pocket and left in his vehicle." Instead, Pena "voluntarily chose to comply with the officer's request."

5

On appeal, Pena argues that his encounter with the officer "was an unlawful investigative detention at the outset" and that the district court's "factual findings relating to show of authority and tone were clearly erroneous and its application of constitutional principles was flawed based upon an incomplete and isolated analysis." Pena contends that the "hearing testimony and video tape of the encounter" demonstrate clear error with respect to the district court's factual findings. In support of this argument, Pena notes that the officer drove past Pena's vehicle and "ran his license plate," came back around and parked seven to ten feet away, left his patrol lights on, and "walked directly" to Pena while wearing a uniform and "likely" a service weapon. Pena argues this was a "clear show of authority" even if it was not a detention. Pena also argues that the officer's verbal communications with Pena had "an accusatory and challenging tone" and were "pointed and a show of authority" because they included telling Pena that he would be "good to go" if "everything clears out" after checking his identification, to keep his hands out of his pockets, to stand in a particular place, and to lean against his vehicle. Pena contends the officer "rejected" Pena's attempts to assert his rights as evidenced by Pena declining to allow the officer to search Pena's pockets, asking why the officer needed Pena's identification, and telling the officer he was going to leave. According to Pena, refusing the requested search and asking the officer questions demonstrated he was "not voluntarily there." Finally, Pena contends that the officer's possession of Pena's identification was a seizure because, although the officer obtained the identification through a request, the request was "reasonably perceived as a command."

We first note that, although Pena contends the district court's factual findings were clearly erroneous, he has failed to demonstrate as much. Substantial evidence supports each of the district court's findings enumerated above. Thus, the core of Pena's argument is that the district court erred in determining the facts showed the encounter was consensual. In its memorandum decision, the district court clearly articulated the legal standards applicable to determining whether an encounter is consensual. Consistent with those standards, the district court correctly concluded that the officer's conduct in this case would have communicated to a reasonable person that he was free to ignore the police presence and go about his business. The

officer did not activate his overhead lights or impede Pena's ability to exit the parking lot,[1] nor did the officer require Pena to exit his vehicle or force him to provide his identification. That Pena asked the officer questions shows that Pena did not engage with the officer involuntarily, and there is no evidence to support Pena's argument that the officer ignored Pena's assertion of his rights. To the contrary, the officer respected Pena's rights as evidenced by the officer responding, "that's fine" when Pena declined the officer's request to check Pena's pocket for weapons. The officer's request to examine Pena's identification also did not convert the otherwise consensual encounter into a detention. It is well-settled that an officer may generally ask an individual questions and ask to examine identification without reasonable suspicion. *Fry*, 122 Idaho at 102, 831 P.2d at 944. Indeed, Pena acknowledges on appeal that he provided his identification voluntarily. We are unpersuaded by Pena's claim that he did so only because the officer's request could only be "reasonably perceived as a command."

Based on the totality of the circumstances, the district court did not err in its conclusion that the encounter between Pena and the officer was consensual up until the officer had reasonable suspicion that Pena possessed paraphernalia.[2]

## IV.

## CONCLUSION

The district court correctly concluded the initial encounter between Pena and law enforcement was consensual and that Pena was not detained until the officer had reasonable suspicion that Pena possessed paraphernalia. Therefore, Pena has failed to show the district court erred in denying his motion to suppress, and his judgment of conviction is affirmed.

Chief Judge GRATTON and Judge BRAILSFORD, **CONCUR**.

---

[1]     Pena also contends that the officer was standing near the driver's side of Pena's vehicle such that, had Pena "tried to reverse to exit the lot, he would have struck" the officer. This assertion appears to be speculative based on what would have happened *if* Pena was in his car while the officer was standing near Pena's vehicle or *if* the officer would have remained standing in the same place *if* Pena had gotten back in his car and attempted to leave. We decline to consider this speculative factual claim as part of our analysis.

[2]     Because we conclude the encounter was consensual, we need not address the alternative arguments regarding whether the officer had reasonable suspicion to detain Pena upon initial contact.