**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 45838**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed:  June 28, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| FLORINDA L.I.M.C. HERRERA, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Deborah A. Bail, District Judge.

Judgment of conviction for felony possession of methamphetamine and misdemeanor possession of drug paraphernalia, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Florinda L.I.M.C. Herrera appeals from her judgment of conviction after a jury found her guilty of felony possession of methamphetamine and misdemeanor possession of drug paraphernalia.  On appeal, Herrera argues the district court erred in denying her motion to suppress the evidence.  Because Herrera was not unlawfully seized during the traffic stop, we affirm the district court's denial of Herrera's motion to suppress and the judgment of conviction.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In early evening, an officer noticed a vehicle parked in a parking lot that was shared by several businesses, including a motel, a gas station, and an office building.  The vehicle was parked in front of the closed businesses, and a female driver and male passenger were seated within the vehicle.  When the officer drove by about an hour later, the officer noticed the same

1

vehicle parked a few parking spaces away from its original location, with a female driver and a female passenger. The officer pulled into the area and followed the vehicle as it left the parking lot of the office building, drove through a shared parking area, and came to a stop in front of a convenience store. The officer parked his patrol car a short distance away, so that he did not interfere with the vehicle's ability to freely move around the parking lot. The officer approached the vehicle on foot and asked the driver if she was okay, if she needed anything, and why she was in the area. The driver explained she was trying to use the Wi-Fi from the convenience store. The officer asked for their identification. The driver provided her identification, but Herrera--the passenger in the vehicle--asked why. The officer responded: "Just cause I'm here, talking with you guys. Just want to make sure you're not America's Most Wanted. That's all." Herrera provided her name to the officer. When the officer asked if there was anything illegal in the vehicle, the driver said yes and explained there were syringes in the back seat. When the officer asked if there was anything illegal on the driver's person, the driver also said yes, at which point the officer arrested the driver and placed her in the patrol car.

The officer asked Herrera to step out of the vehicle and questioned her about a cheetah-print bag that was in the back seat of the car. Herrera gave the officer permission to search the bag. Inside the cheetah-print bag, the officer saw a syringe. Herrera was arrested.

The State charged Herrera with felony possession of a controlled substance, methamphetamine, Idaho Code § 37-2732(c), and misdemeanor possession of drug paraphernalia, I.C. § 37-2734A. Herrera filed a motion to suppress and argued that the officer seized and detained Herrera without valid cause. The district court denied Herrera's motion to suppress. The case proceeded to trial, where the jury found Herrera guilty of felony possession of methamphetamine and misdemeanor possession of drug paraphernalia. For the paraphernalia possession, the district court sentenced Herrera to forty-four days, with credit for time already served. For the methamphetamine possession, the district court sentenced Herrera to a unified sentence of four years, with two years determinate. The district court suspended the latter sentence for a two-year term of probation. Herrera timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by

2

substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Herrera argues the district court erred in denying her motion to suppress the evidence. According to Herrera, the officer seized Herrera without reasonable, articulable suspicion of criminal wrongdoing. Specifically, Herrera asserts an unlawful seizure occurred on two occasions: first, when the officer obtained Herrera's identification, and second, when the officer denied the driver's request to exit the vehicle.

**A.   The Officer Did Not Unlawfully Seize Herrera When He Asked for Herrera's Identification**

Herrera claims she was unlawfully seized when the officer obtained her identification. According to Herrera, she succumbed to the officer's authority only after the officer insisted that he see Herrera's identification. Herrera relies on her conversation with the officer to support her argument on appeal. The conversation went as follows:

| | |
|---|---|
| Officer: | Do you have an ID on you? |
| Herrera: | I do not. |
| Officer: | You don't have one? Have you ever had one? |
| Herrera: | Yeah. Um. I do have one. |
| Officer: | Okay. Do you mind if I grab your info? |
| Herrera: | I do. |
| Officer: | What's that? |
| Herrera: | Is there a reason why? |
| Officer: | Just cause I'm here, talking with you guys. Just want to make sure you're not America's Most Wanted. That's all. |
| Herrera: | Okay. It's Florinda. F-L-O-R-I-N-D-A. |
| Officer: | F-L-O-R. |
| Herrera: | I-N-D-A. |
| Officer: | First name? |
| Herrera: | Yeah. |
| Officer: | That's your first name? Oh. What's your last name? |
| Herrera: | H-E-R-R-E-R-A. |
| Officer: | What's your middle? |
| Herrera: | L. |

3

Officer:     What is it?
Herrera:     L.
Officer:     L for what?
Herrera:     Lucia.
Officer:     L-U-C-I?
Herrera:     L-U-C-I-A.
Officer:     Oh.  Okay.  What's your birthdate?
Herrera:     6-4-92.
Officer:     6-4-92.

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures.  However, not all encounters between the police and citizens involve the seizure of a person.  *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992).  Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred.  *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991).  A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions or by putting forth questions if the individual is willing to listen.  *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983).  Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed.  *Royer*, 460 U.S. at 498.  Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification.  *Fry*, 122 Idaho at 102, 831 P.2d at 944.  So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required.  *Id.*

The officer did not seize Herrera when he asked Herrera to identify herself.  The officer approached the vehicle and asked questions of the driver and of Herrera.  For purposes of a Fourth Amendment analysis, such inquiries do not constitute a seizure.  *Royer*, 460 U.S. at 497-98.  A stop becomes a seizure only when the police convey a message that compliance is required.  *Fry*, 122 Idaho at 102, 831 P.2d at 944.  Here, no such requirement occurred.  The officer did not demand to see the identification of Herrera, but rather, he engaged in a conversation with Herrera about her identity.  When Herrera asked why the officer requested her identification, the officer responded:  "Just cause I'm here, talking with you guys.  Just want to

4

make sure you're not America's Most Wanted. That's all." The officer's response was not threatening or imposing, and it did not constitute a show of authority, as Herrera argues on appeal. The tone was instead lighthearted and joking, and induced laughter from the occupants of the vehicle. When Herrera then provided her name and birthdate, it was not an unlawful seizure. The district court found that no constitutional rights were violated when the officer approached Herrera in a public location and asked whether Herrera minded providing her identification. The district court did not err in its finding.

**B.     The Officer Did Not Unlawfully Seize Herrera When the Officer Responded to the Driver's Request to Exit the Vehicle**

Herrera argues she was unlawfully seized when the officer denied the driver's request to exit the vehicle. The conversation at issue involves the driver and the officer.

| | |
|---|---|
| Driver: | Now are we allowed to sit over there for a little while and come back over here? Basically trying to make room for the customers here. |
| Officer: | I would have to look to see if there are any signs over there. I'm not--I can't give you a definite. |
| Driver: | Alright. Yes. |
| Officer: | Cause some places say it's only for customers, usually that's what it's for. |
| Driver: | Oh, right. Okay. |

We are not persuaded that the conversation amounts to a seizure for purposes of the Fourth Amendment. The officer did not physically restrict the movement of Herrera or the driver of the vehicle. The officer also did not tell Herrera and the driver that they were not allowed to exit the vehicle and move to a different location. When the driver inquired about moving, the officer responded he would have to look and see if there were signs posted that did not allow it. Such a response does not indicate that the occupants of the vehicle are seized. There is no evidence that Herrera in particular--who was not a part of the conversation--was unlawfully seized at that moment. Herrera therefore fails to show how the district court erred when it denied her motion to suppress.

## IV.

### CONCLUSION

Because Herrera was not unlawfully seized during the traffic stop, we affirm the district court's denial of Herrera's motion to suppress and the judgment of conviction.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.

5