# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46625

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

KCEE ALEN LACEFIELD,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Filed: November 21, 2019

Karel A. Lehrman, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Benjamin J. Cluff, District Judge.

Order denying motion to suppress and judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Kcee Alen Lacefield appeals from the judgment of conviction for possession of a controlled substance. Lacefield argues that the district court erred in denying his motion to suppress. For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Lacefield was charged with possession of a controlled substance, Idaho Code § 37-2732(c)(1), and possession of drug paraphernalia, I.C. § 37-2734A. The charges arose after Detective Nay and Detective Hayes noticed a male and female leaving a residence that the detectives were observing. The detectives believed that a female by the name of Ariel Stark, who had an outstanding felony warrant for her arrest, was at the residence. Because Detective Nay believed that the female leaving the residence was Stark, Detective Nay approached the

1

individuals from behind, activated his overhead lights, and verbally requested that the female stop.[1] Both the female (later identified as Ashley Allen) and male (later identified as Lacefield) stopped walking. Detective Nay approached the female and asked various questions in an effort to identify her. During questioning, the detective separated Allen from Lacefield and had Allen sit on the curb. Ultimately, Detective Nay discovered that the female was not Stark but Allen who also had an outstanding warrant for her arrest. Detective Nay confirmed the warrant and placed Allen under arrest.

The district court found that Detective Nay did not interact with Lacefield until about two minutes into his questioning of Allen, at which point Detective Nay asked Lacefield if he had any identification on his person and if he had any outstanding warrants. Lacefield responded in the negative to both questions. In relation to Detective Nay, the district court found:

> During the time that Nay spoke with, and ultimately arrested, Ashley Allen, Defendant did not leave the general area. Instead, Defendant freely walked around the area, kneeled down, made several phone calls, sent text messages, and did not engage in any way in Nay's conversation and questioning of Allen. Nor did Nay engage Defendant in any way other than the two questions cited above.

While Detective Nay was questioning Allen, Detective Hayes arrived on scene and approached the area where Detective Nay was questioning Allen. Detective Hayes did not activate his lights, he was not running, he did not draw his weapon, and he did not engage Allen or Lacefield. After some time, Detective Hayes approached Lacefield and asked his name, date of birth, whether he was on probation, if he had been in trouble before, and how he knew Allen. During the questioning, a vehicle arrived and Detective Hayes left Lacefield to speak with the driver. The driver identified herself as Lacefield's girlfriend and explained that she had arrived to pick up Lacefield. When questioned, the driver informed Detective Hayes that Lacefield had been arrested "about a month ago for possession of methamphetamine." Based on this, Detective Hayes approached Lacefield, who had remained on scene, and asked for consent to search the backpack that Lacefield was carrying. Lacefield consented, and a search revealed the presence of methamphetamine and drug paraphernalia.

---

[1] Detective Nay did not specify at the time he said "stop" that he was only referring to the female and not Lacefield. However, Detective Nay testified at the motion to suppress hearing that he was referring to the female and the district court so found. This finding is not challenged on appeal.

The State charged Lacefield with possession of a controlled substance and possession of drug paraphernalia. In response, Lacefield filed a motion to suppress the evidence obtained from the search of the backpack, arguing that he was seized absent reasonable suspicion during the encounter because Detective Nay did not specify who he was commanding to stop and never told Lacefield he was free to leave after checking his identity. The district court held a hearing and denied Lacefield's motion to suppress, finding that Lacefield was not seized but voluntarily remained on scene. Thereafter, Lacefield entered a conditional guilty plea to possession of a controlled substance in exchange for the State dismissing the paraphernalia charge. In addition, Lacefield reserved his right to appeal the district court's denial of his motion to suppress. The district court sentenced Lacefield to a unified term of six years with three years determinate and retained jurisdiction. Lacefield timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Lacefield argues that he was unlawfully seized absent reasonable suspicion in violation of the Fourth Amendment. The Fourth Amendment to the United States Constitution and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct.

3

App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions, or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.*

In this case, Lacefield contends that he was seized and a reasonable person would not have felt free to terminate the encounter with Detective Nay and Detective Hayes because Detective Nay drove up behind Allen and Lacefield, activated his overhead lights, ordered the parties to stop without specifying which of the two the order pertained to, and both detectives asked him various questions. Based on those facts, Lacefield argues that the district court should have granted his motion to suppress because the evidence in his backpack was found as the result of an unlawful seizure. We disagree.

We conclude that Lacefield was not seized within the meaning of the Fourth Amendment until Detective Hayes discovered methamphetamine pursuant to a consensual search of Lacefield's backpack. The district court correctly concluded that Lacefield's liberty was never restrained and he voluntarily remained on scene. Detective Nay ordered Allen to stop and, although he did not specify that he was referring only to Allen, a reasonable person in Lacefield's position would have felt free to leave. Detective Nay did not approach Lacefield specifically. Rather, he approached Allen, ordered her to sit on the curb, and began questioning her. While this was occurring, Lacefield "freely walked around the area, kneeled down, made several phone calls, sent text messages, and did not engage in any way in Nay's conversation and questioning of Allen." Although the detectives eventually requested identification and asked Lacefield various questions, Lacefield was never restrained by means of physical force or a show of authority. *Fry*, 122 Idaho at 102, 831 P.2d at 944 (explaining that officers may generally ask individuals questions and ask to examine identification). In addition, Lacefield voluntarily remained on scene when Detective Hayes stopped engaging in conversation with Lacefield and

4

approached the vehicle that had just arrived.  Thus, based on the totality of the circumstances, Lacefield was not seized within the meaning of the Fourth Amendment.  Accordingly, the district court did not err in denying Lacefield's motion to suppress.

## VI.

## CONCLUSION

Because the district court did not err in denying Lacefield's motion to suppress, Lacefield's judgment of conviction is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.