**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48806**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: August 31, 2022** |
| Plaintiff-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JESUS MANUEL MARTINEZ | ) **OPINION AND SHALL NOT** |
| ORDUNO, | ) **BE CITED AS AUTHORITY** |
| | ) |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Teton County. Hon. Steve W. Boyce, District Judge.

The district court's order granting motion to suppress, <u>reversed</u> and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for appellant. Justin R. Porter argued.

Kyle G. Hansen, Idaho Falls, for respondent.

_____

GRATTON, Judge

The State appeals from the district court's order granting Jesus Manuel Martinez Orduno's motion to suppress evidence. For the reasons set forth below, we reverse the district court's order and remand the case for further proceedings consistent with this opinion.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In August 2019, at about 2:40 a.m., Deputy Lemieux was patrolling alone when he observed a truck and another vehicle parked in a public river-access parking lot outside of the Driggs city limits. Deputy Lemieux decided to check on the vehicles' occupants. Deputy Lemieux did not activate his sirens or overhead emergency lights and positioned his patrol vehicle so that it was not blocking the parking lot exit. As he walked toward the vehicles, Deputy Lemieux noticed

1

a piece of paper taped over the truck's driver-side window and a single occupant inside; the occupant was later identified as Orduno.

As Deputy Lemieux approached the truck, Orduno rolled down the driver's side window and the two engaged in conversation. Deputy Lemieux recognized Orduno from a prior interaction in which Orduno reported he uses controlled substances in his vehicle to keep them away from his family. During the conversation, Orduno appeared "extremely nervous" so Deputy Lemieux asked him if there was anything illegal in the truck and inquired whether he would consent to a search. Orduno replied, "Jesus man" and furtively glanced down and toward the backseat before saying "I want to go." Orduno did not roll up the window, start the truck, or try to end the conversation. Deputy Lemieux asked Orduno if he remembered what the deputy previously told him about "being honest," then again asked him if there was anything illegal in the truck. Orduno admitted to Deputy Lemieux that he had "a little bit of weed," then reached into his driver-side door and handed the deputy a bag containing a metal socket and burnt marijuana. At that point Deputy Lemieux instructed Orduno to exit the vehicle, placed him in handcuffs, and performed a cursory search of the truck.

When Deputy Lemieux searched the panel on the driver-side door, he found a baggie containing cocaine residue and then arrested Orduno. After being read his *Miranda*[1] rights, Orduno admitted to Deputy Lemieux that the baggie contained cocaine and indicated that there was more marijuana in the truck. A more thorough search of Orduno's vehicle and his person yielded an additional bag containing cocaine residue and a bag of marijuana.

The State charged Orduno with possession of cocaine, possession of marijuana, and possession of drug paraphernalia. Orduno filed a motion to suppress, arguing that the consensual encounter between him and Deputy Lemieux evolved into an illegal detention when the deputy ignored Orduno's statement that he wanted to go and the deputy asked more questions and continued the discussion. The district court granted the motion to suppress, concluding that "the detention of Orduno cannot be justified under the community caretaking function" and that there was no reasonable, articulable suspicion for the detention.

The State timely filed its notice of appeal.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The State argues that the district court erred because (1) it implicitly concluded that Orduno was seized from the moment Deputy Lemieux contacted him; and (2) it resolved an irrelevant issue against the State and granted Orduno's motion to suppress based upon an irrelevant legal determination. More specifically, the State contends that the district court's analysis of the community caretaking doctrine was irrelevant and not a substitute for determining whether and when a detention occurred.

The Fourth Amendment to the United States Constitution, guarantees the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991).

A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Florida v. Royer*, 460 U.S. 491, 498 (1983). Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102,

3

831 P.2d at 944. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.* Importantly, the critical inquiry is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he or she was not at liberty to ignore the police presence and go about his or her business. *Bostick*, 501 U.S. at 437. "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 231-234 (1973).

The district court held that Orduno's seizure was unreasonable because it "cannot be justified under the community caretaking" doctrine. An officer's community caretaking function arises from an officer's duty to help citizens in need of assistance and is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *State v. Maddox*, 137 Idaho 821, 824, 54 P.3d 464, 467 (Ct. App. 2002) (quoting *Cady v. Dombroski*, 413 U.S. 433, 441 (1973)). Since interactions of this nature are considered non-consensual, they are treated as a seizure within the context of the Fourth Amendment. *State v. Willoughby*, 147 Idaho 482, 487-88, 211 P.3d 91, 96-97 (2009). In support of its finding, the district court referred to a single line written by Deputy Lemieux in his declaration in which he stated: "I thought this was unusual given the time, and I stopped to perform a community caretaking check of any occupants." The district court did not explicitly state when it believed the seizure occurred but determined, "it is apparent the [Deputy] used his community caretaking function as a means of initiating an investigative detention without reasonable, articulable suspicion."

The State argues that not only was the community caretaking doctrine never advanced as a justification for the encounter,[2] but the district court disregarded all other legal theories it set forth to validate Orduno's eventual seizure. We agree with the State and decline to address the community caretaking doctrine because it was never raised as justification for detention. However,

---

[2] While the State noted in the factual background section of its memorandum opposing Orduno's motion to suppress that Deputy Lemieux "decided to perform a community caretaking on any inhabitants of the vehicles," the State did not argue that the deputy's community caretaking function justified a detention. Rather, the State argued, as it does on appeal, that the encounter was consensual up to the point where Orduno admitted possessing controlled substances.

4

this Court may address any issue preserved for and argued on appeal. *See State v. Neimeyer*, 169 Idaho 9, 14, 490 P.3d 9, 14 (2021). A party preserves an issue for appeal by both raising the issue and the party's position on it before the trial court. *Id.* Because the State has preserved its argument that the encounter was consensual, we consider that argument on appeal.

Both parties agree that Orduno voluntarily engaged in conversation with Deputy Lemieux and that he was seized at some point during the encounter. Whether a seizure occurred is a legal question. *State v. Cohagan*, 162 Idaho 717, 721, 404 P.3d 659, 663 (2017). Thus, on appeal, this Court is tasked with determining what moment Orduno was seized by Deputy Lemieux and whether the detention was lawful.

Orduno argues that he was unlawfully detained the moment Deputy Lemieux ignored his statement that he wanted to go and instead asked him if he remembered what he had previously been told about being honest.

The State, on the other hand, argues that Orduno was not detained until Deputy Lemieux ordered Orduno to exit the truck and placed him in handcuffs. The State contends that probable cause justified any warrantless search or seizure that occurred after Orduno admitted that he had some "weed" and handed a bag containing burnt marijuana and drug paraphernalia to Deputy Lemieux.

The United States Supreme Court, in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), stated:

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Other circumstances that may indicate a seizure include whether an officer used overhead emergency lights or took action to block a vehicle's exit route. *Willoughby*, 147 Idaho at 487-88, 211 P.3d at 96-97. Although citizen conduct is a relevant part of the encounter, the analysis of when a citizen is detained is based upon the conduct and behavior of the officer, not that of the citizen. A court will conclude that a seizure has occurred when an officer, by means of physical force or show of authority, restrains the liberty of a citizen. *Bostick*, 501 U.S. at 434.

The Idaho Supreme Court recently analyzed the nature of a police-citizen encounter in *State v. Hollist*, __ Idaho ___, 513 P.3d 1176 (2022). In that case, the officer originally engaged with Hollist under his community caretaking function because Hollist appeared to be asleep or

5

unconscious near a canal. *Id.* at _____, 513 P.3d at 1182. However, the officer quickly determined Hollist did not require assistance and therefore the community caretaking function dissipated. *Id.*

The Idaho Supreme Court stated that the question was whether Hollist was seized prior to being handcuffed by the officer:

> [The officer] called off the ambulance as Hollist walked toward a child's bicycle lying on the ground and stated "I need to be on my way," which prompted [the officer] to state, "hold on man, you got an ID on you? My lieutenants want to know who I am talking to." It is at this point that [the officer] detains Hollist as Hollist is required to remain with [the officer] until he, Hollist, identifies himself.

*Id.* at ____, 513 P.3d at 1184. The Court explained that Hollist attempted to leave multiple times during his exchange with the officer stating at various times, "I need to be on my way," "dude, I gotta go," and "dude, I don't want to stay here." *Id.* Each time Hollist indicated a desire to leave, the officer responded: "hold on, man," "why don't you come over here real [sic] quick," "stay here," or "hold on right here." *Id.* Hollist was eventually handcuffed because he attempted to mount his bicycle again. *Id.* The officer's conduct repeatedly prevented Hollist from leaving, subjecting Hollist to a seizure well before the handcuffs were used. *Id.* at _____, 513 P.3d at 1183.

Deputy Lemieux's conduct is distinguishable from the officer's conduct in *Hollist*. Unlike *Hollist*, Orduno's exchange with Deputy Lemieux was consensual until Deputy Lemieux commanded Orduno to step out of the truck. In *Hollist*, when Hollist said he was leaving the officer told him to "hold on" and "stay."[3] These were clear commands that dictated Hollist's movement. Here, after Orduno stated he wanted to go, there is no indication that Deputy Lemieux touched Orduno, displayed his weapon, made any demands, or exhibited other intimidating behavior that would indicate Orduno was not free to discontinue the encounter. *See State v. Reese*, 132 Idaho 652, 653, 978 P.2d 212, 213 (1999). Deputy Lemieux continued his conversation with Orduno without issuing any commands, and Orduno continued to engage in conversation with the deputy. Although Deputy Lemieux did not specifically respond to Orduno's statement that he "want[ed] to go," Deputy Lemieux had no legal duty to do so. Rather, the relevant question is whether a reasonable person would feel free to disregard the police and go about his business; if so, the encounter is consensual. *State v. Alvarenga-Lopez*, 169 Idaho 215, 218, 494 P.3d 763, 766 (2021).

---

[3]     The officer also requested Hollist's identification.

6

Although Orduno's statement "I want to go" is similar to one of Hollist's statements, Orduno only made the statement once. As the district court found, Orduno did not roll up the window, start the truck, or try to end the conversation at any other point. Orduno's actions (or inactions) is in contrast to Hollist's, who repeatedly insisted on leaving, was told to "stay," and was subsequently handcuffed because he attempted to leave.

Deputy Lemieux's response to Orduno (or lack thereof) was not a show of authority. Orduno argues a show of authority does not require a command or physical conduct based upon this Court's opinion in *State v. Zubizareta*, 122 Idaho 823, 839 P.2d 1237 (Ct. App. 1992). In particular, Orduno contends that the facts of *Zubizareta* are "nearly identical" to the facts in this case and relies on this Court's conclusion that Zubizareta was seized when the officer "told Zubizareta to remain seated." Orduno misconstrues *Zubizareta*. First, there are important factual differences between this case and *Zubizareta* as it relates to the point of seizure. Namely, after making contact with Zubizareta and smelling a strong odor of an alcoholic beverage coming from Zubizareta's mouth, the officer told Zubizareta to stay seated and then went to talk to other officers who had arrived on scene as backup. *Id.* at 825, 839 P.2d at 1239. This Court held that Zubizareta was seized when the officer told him to remain seated because, at that point, a reasonable person in Zubizareta's position would not feel free to go about his business. *Id.* at 828, 839 P.2d at 1242.

Unlike in *Zubizareta*, Deputy Lemieux's reminder about the importance of honesty in conjunction with his question about whether there was anything illegal in the truck did not convert the consensual encounter into a detention. Deputy Lemieux did not demand that Orduno continue the discussion, command Orduno to stay, or ask for and retain Orduno's license (or any identification). In short, a reasonable person in Orduno's position would have felt free to disengage with Deputy Lemieux and go about his business. Accordingly, at the time Orduno stated he wanted to go, but continued to engage in conversation with Deputy Lemieux, the encounter remained consensual, and as a result, it was not a seizure under the Fourth Amendment. Rather, no seizure occurred until Orduno admitted he possessed a controlled substance, at which point Deputy Lemieux could detain Orduno.

## IV.

## CONCLUSION

The encounter between Orduno and Deputy Lemieux was consensual up until Orduno disclosed he was in possession of a controlled substance at which time he was lawfully detained.

7

Accordingly, the district court's order granting Orduno's motion to suppress is reversed, and this case is remanded to the district court for further proceedings.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.